# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIK LOPEZ-TORRALBA,** | : | |
| *Petitioner* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **THE DISTRICT ATTORNEY OF THE** | : | **No. 22-2728** |
| **COUNTY OF MONTGOMERY,** *et al.*, | : | |
| *Respondents* | : | |

## MEMORANDUM

**MURPHY, J.**                                                                            **September 30, 2024**

Erik Lopez-Torralba petitions the court for a writ of habeas corpus.  He challenges his 2016 drug convictions in the Montgomery County Court of Common Pleas, arguing that his trial counsel was ineffective because he failed to argue for suppression on the ground that police lacked probable cause to arrest Mr. Lopez-Torralba.  The Superior Court of Pennsylvania rejected this claim during state post-conviction proceedings by finding that police possessed probable cause to arrest Mr. Lopez-Torralba.  We must defer to this legal conclusion unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Under this highly deferential standard of review, we deny Mr. Lopez-Torralba's petition.  However, Mr. Lopez-Torralba has made a "substantial showing" that his Sixth Amendment right to counsel was denied, *see* 28 U.S.C. § 2253(c)(2), and the constitutional issue presented by his case is "adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Thus, we grant a certificate of appealability on Mr. Lopez-Torralba's sole claim of ineffective assistance of counsel.

I.      **Background**

On April 13, 2015, Detective Michael Reynolds met with a confidential informant who had proven reliable in the past.  *See* DI 20-29 at 39-40, 42 (ECF).  In Detective Reynolds' presence, this informant made three phone calls to a Mexican phone number.  *Id.* at 42.  As a result of these calls, the informant called Gladiz Basurto-Leal and arranged to purchase one kilogram of heroin in the Chili's parking lot across from King of Prussia Mall.  *Id.* at 42-44.

The police determined that Ms. Basurto-Leal lived at 831 George Street in Norristown and began surveilling that location the morning of April 14.  *Id.* at 44.  At 11:08 a.m., a blue Chevy Lumina pulled up to the house.  *Id.* at 49, 51.  A Hispanic woman exited the driver's side, and a Hispanic man exited the front passenger side; both entered 831 George Street.  *Id.* at 49. The woman was later identified as Ms. Basurto-Leal, and the man was later identified as petitioner Erik Lopez-Torralba.  *Id.* at 51-52.  However, on April 14, police did not know the identity of the Hispanic man with Ms. Basurto-Leal.[1]  *Id.* at 44-45.

About five minutes later, the pair exited the house, resumed their previous spots in the blue Chevy Lumina, and drove away.  *Id.* at 54.  Before they got in the car, though, Lieutenant Stephen Forzato, who was surveilling the house, noted that Mr. Lopez-Torralba was wearing red pants and a white shirt, and he was carrying a plastic bag that "looked sort of gray or off-white, but it appeared to be an off-white clear."  *Id.* at 52-53.  Lieutenant Forzato testified further: "you could tell from the outside of the bag that there was something in – it looked like a brick to me." *Id.* at 52; *see also id.* at 53 ("That bag had a shape of like a brick inside of it.").  Lieutenant Forzato radioed to other officers that "the Hispanic male, in the red pants . . . I think he has what you're looking for . . . I think he has a brick in the bag."  *Id.* at 53.

---

[1] Detective Reynolds also confirmed at trial that the informant's three calls to a Mexican phone number on April 13 had not been to Mr. Lopez-Torralba.  DI 20-29 at 45.

Lieutenant Forzato followed the blue Chevy Lumina, but he lost sight of the car. *Id.* at 54. When he caught back up to the car, Ms. Basurto-Leal was still driving, but Mr. Lopez-Torralba was gone.[2] *Id.* at 55. Lieutenant Forzato then followed Ms. Basurto-Leal to the Chili's parking lot, where she sat in the car alone for about five minutes. *Id.* at 57. When she pulled out of the Chili's lot, police stopped the Chevy and arrested Ms. Basurto-Leal. *Id.* at 58. A search of the Chevy yielded nothing illegal.[3] *Id.* at 59.

Meanwhile, Detective James Vinter was still surveilling 831 George Street. *Id.* at 66. At about 12:25 p.m., he saw a silver Acura TL circle the block three times. *Id.* at 66, 68-69. The third time, the Acura stopped, and a man wearing red pants and a white shirt — Mr. Lopez-Torralba[4] — exited the car and entered 831 George Street. *Id.* at 69-70. Thirty minutes later, Mr. Lopez-Torralba exited the house with an unknown male, and the pair entered the Acura. *Id.* at 70. Mr. Lopez-Torralba drove the Acura away. *Id.*

Around 1:00 p.m., Detective Michael Fedak observed the Acura parked across from 541 Arch Street,[5] which he saw Mr. Lopez-Torralba enter. *Id.* at 75-76. When Detective Fedak finished circling the block one time, Mr. Lopez-Torralba was getting back in the Acura. *Id.* at 76. Mr. Lopez-Torralba then drove away. *Id.*

---

[2] Lieutenant Forzato surmised that Mr. Lopez-Torralba had exited the Chevy "somewhere along Arch Street" because he had seen the car turn onto Arch Street before losing sight of it. *See* DI 20-29 at 61.

[3] The record is silent as to whether the search of the Chevy yielded any brick-shaped objects or a gray or off-white plastic bag.

[4] Although Detective Vinter identified Mr. Lopez-Torralba at trial, he explained that he did not know who Mr. Lopez-Torralba was when he saw him exit the Acura TL on April 14. DI 20-29 at 71.

[5] Officers later learned that 541 Arch Street was Mr. Lopez-Torralba's residence. DI 1-1 at 80 (ECF).

Shortly thereafter, Detective James Wood started following the Acura down Arch Street. *Id.* at 84, 88.  Detective Wood, who was in an unmarked police car, requested that one of the nearby uniformed officers in a marked police car stop the Acura.[6]  *Id.* at 88; DI 1-1 at 65-67 (ECF).  However, just before the stop was made, the Acura pulled into a parking space.  DI 1-1 at 67.  By about 1:10 p.m., both a marked police car with at least two uniformed officers and Detective Woods' unmarked police car were behind the parked Acura, and Detective Forzato's unmarked police car was on the opposite side of the street.  *Id.* at 66-68.  Detective Woods emerged from his vehicle wearing plain clothes and a bullet-proof vest with "Police" written across the front and a weapon concealed inside.  *Id.* at 65, 68.  He approached Mr. Lopez-Torralba, who was in the driver's seat of the Acura, while two uniformed officers approached the passenger side of the car.  *Id.* at 68-69.  At this point, in addition to Mr. Lopez-Torralba, there were two passengers in the Acura.[7]  *Id.* at 69.

When he reached the driver-side of the Acura, Detective Woods "engaged a conversation" with Mr. Lopez-Torralba, "took him out[,] and patted him down" for weapons.  *Id.* at 70.  Detective Woods then informed Mr. Lopez-Torralba that he was being stopped as part of a drug investigation.  *Id.*  Mr. Lopez-Torralba denied involvement with drugs, explaining that he had parked to get something to eat with the two passengers in the Acura.  *Id.*  Mr. Lopez-Torralba stated that he did not have anything in his vehicle and gave verbal permission for the

---

[6] Detective Wood explained at the suppression hearing that, because he believed the Acura was involved in "a large-scale drug operation involving heroin," he thought it safer to use a marked patrol car to pull the Acura over in order to create the impression that the stop was for a "simple traffic violation."  DI 1-1 at 67.

[7] The record does not clearly disclose when the second passenger joined Mr. Lopez-Torralba in the Acura, but Mr. Lopez-Torralba reports that they were "later identified as [Ms.] Basurto-Leal's two brothers, Yovany and Jonathan Basurto."  DI 1-1 at 10.

officers to search the Acura.  *Id.* at 72.  This conversation occurred "[i]n a casual, calm manner."  *Id.* at 71.

The police did not search the Acura at that time.  *Id.* at 73.  Instead, they handcuffed Mr. Lopez-Torralba,[8] placed him in a patrol car,[9] and transported him to the nearby Norristown Police Department, about one minute away.  *Id.* at 73-74; DI 1-2 at 29-30.  Detective Woods walked from the Department back to the Acura and drove the Acura to the Police Department.  DI 1-1 at 74.  This process took about ten minutes.  *Id.* During this time, Mr. Lopez-Torralba remained handcuffed inside the patrol car.  *Id.*

After Detective Woods obtained a "consent to search form" from another officer, Mr. Lopez-Torralba was let out of the patrol car.  *Id.* at 75.  According to Detective Woods, Mr. Lopez-Torralba was in custody and "not free to go at that point."  *Id.* at 95.  He and Detective Woods then sat together in the Acura — Mr. Lopez-Torralba on the passenger side and Detective Woods on the driver's side.  *Id.* at 96.  Detective Woods explained that he "wanted to be alone

---

[8] The Superior Court found that Mr. Lopez-Torralba was handcuffed, and we defer to that finding.  In adjudicating Mr. Lopez-Torralba's ineffective assistance claim, the Superior Court stated that Mr. Lopez-Torralba was handcuffed.  DI 1-2 at 29-30 (ECF).  Mr. Lopez-Torralba insists that he was handcuffed, DI 24 at 21 n.1 (ECF), and one of the passengers in the Acura testified at trial that the police had "handcuffed us and everything," DI 20-29 at 396.  During the suppression hearing, Detective Woods contradicted himself by testifying both: (1) he could not remember whether Mr. Lopez-Torralba was handcuffed when he was placed in the patrol car, DI 1-1 at 73, and (2) Mr. Lopez-Torralba was never in handcuffs at any point, *id.* at 87, though the latter testimony could be understood to only refer to the period when officers were searching Mr. Lopez-Torralba's home.  During Mr. Lopez-Torralba's direct appeal, the Superior Court appeared to imply that, because Detective Woods did not make physical contact with Mr. Lopez-Torralba apart from patting him down, Detective Woods did not handcuff him.  *See* DI 13 at 33.  However, two uniformed police officers and Detective Fedak were also on the scene.  *See* DI 1-1 at 66-68.  Given this equivocal record, we defer to the Superior Court's finding that Mr. Lopez-Torralba was handcuffed, mindful of our deferential standard of review.  *See* 28 U.S.C. §§ 2254(d)(2), (e)(1).

[9] The patrol car contained no interior handles or locks.  DI 1-1 at 93 (ECF).

with [Mr. Lopez-Torralba] as so not to be intimidated by any other officers that were close by."
*Id.* at 75.  By this point, the detective had removed his bullet-proof vest and was not carrying a weapon.  *Id.* at 75-76.  Mr. Lopez-Torralba was no longer handcuffed.  *Id.* at 76.

Over the course of the next five minutes, Detective Woods and Mr. Lopez-Torralba had a "calm" conversation, during which Mr. Lopez-Torralba stated that he lived at 541 Arch Street and signed a written consent to search his car, home, and iPhone.[10]  *Id.* at 76-82.  The consent form Mr. Lopez-Torralba signed, which Detective Wood read aloud and asked Mr. Lopez-Torralba to read himself, contained the following language:

> I understand that I have the right to refuse the consent to search described above and the right to refuse to sign this form. I further state that no promises, threats, force, or physical or mental coercion of any kind whatsoever have been used against me to get me to consent to the search described above or to sign this form.

DI 13 at 18-19 (ECF).  Detective Wood verbally informed Mr. Lopez-Torralba that "he could stop the search at any time."  *Id.* at 19.  The pair then exited the car, and Mr. Lopez-Torralba stood 10 to 15 feet away while officers searched the Acura for about 15 minutes.  DI 1-1 at 82-83.  The officers found nothing illegal in the Acura.  *Id.* at 83.

Detective Wood then handed Mr. Lopez-Torralba his keys and informed him that he and other officers would follow Mr. Lopez-Torralba to his home, where they were joined by three additional detectives.  *Id.* at 84.  Before entering 541 Arch Street, Detective Wood asked Mr. Lopez-Torralba whether the house contained any weapons, and Mr. Lopez-Torralba told Detective Woods that there was a gun in his bedroom.  *Id.*  After Mr. Lopez-Torralba opened the

---

[10] Detective Wood noticed an iPhone in the center console of the Acura and asked Mr. Lopez-Torralba whether it belonged to him.  DI 1-1 at 81; DI 13 at 18 (ECF).  Mr. Lopez-Torralba said that it did belong to him, and he gave Detective Wood the password to his iPhone. DI 1-1 at 81.  Detective Wood retained Mr. Lopez-Torralba's cell phone.  DI 13 at 19.

front door, he led the detectives to the third floor, which he had to unlock with a key, and pointed to the safe that contained the gun. *Id.* at 85-86. During the subsequent search, Detective Wood discovered heroin in a box above a stairway. *Id.* at 86.

Officers also searched the home of Ms. Basurto-Leal on April 14. DI 20-29 at 171-72. In her basement, police found a sealed car battery that contained heroin.[11] *Id.* at 172, 178-79.

## A.     Trial

Mr. Lopez-Torralba was arrested and charged with two counts of possession of heroin with intent to deliver, two counts of conspiracy to possess heroin with intent to deliver, and one count of possession of drug paraphernalia. DI 1-2 at 5. Mr. Lopez-Torralba's trial lawyer, Sean E. Cullen, filed two "omnibus" pretrial motions. *Id.* Attorney Cullen's first motion argued, among other things, that the arrest of Mr. Lopez-Torralba was illegal because it lacked probable cause. DI 1-1 at 131. His subsequent "supplemental" omnibus motion primarily argued that Mr. Lopez-Torralba's consent to the search of his car, home, and phone was not knowing, voluntary, and intelligent.[12] *Id.* at 137.

The Honorable William Furber of the Montgomery County Court of Common Pleas held a hearing on these motions on March 22, 2016. DI 1-2 at 5. When Judge Furber asked Attorney Cullen to articulate the issues in Mr. Lopez-Torralba's case, Attorney Cullen incorrectly stated that, in addition to the "huge amounts of heroin" police found in Mr. Lopez-Torralba's apartment, "there was additional heroin found in the car," referring to Mr. Lopez-Torralba's

---

[11] At trial, Ms. Basurto-Leal testified that, on April 12, she and Mr. Lopez-Torralba had driven to Atlanta, where a man gave them this car battery in exchange for $111,000. DI 20-29 at 121-23. The battery was then placed in Ms. Basurto-Leal's home. *Id.* at 126.

[12] The "supplemental" motion did, however, assert that police lacked probable cause for Mr. Lopez-Torralba's arrest. *See* DI 1-1 at 137 ¶ 8b.

silver Acura.[13]  *See* DI 1-1 at 53.  He went on to explain that the only issue at the suppression

hearing was the validity of Mr. Lopez-Torralba's consent.[14]  *Id.* at 59.  Attorney Cullen's consent

argument was "multi-folded," and he argued in part that Mr. Lopez-Torralba should have been

Mirandized before being asked for his address on the "consent to search" form.[15]  *Id.* at 107-17.

After this hearing, Judge Furber found that Mr. Lopez-Torralba's consent was, in fact, knowing,

voluntary, and intelligent.  DI 1-2 at 5-6.  Judge Furber denied the motion to suppress.  *Id.*

On March 30, a jury found Mr. Lopez-Torralba guilty on all charges.  *Id.* at 6.  He was

sentenced to an aggregate term of nine to eighteen years.  *Id.*

### B.      Direct Appeal

Mr. Lopez-Torralba filed a pro se notice of appeal from his sentence.  DI 21 at 7 (ECF).

Henry S. Hilles, III, represented Mr. Lopez-Torralba on appeal.  DI 1-2 at 6.  Mr. Hilles argued

that the trial court committed two reversible errors.  *Id.*  First, he argued that the trial court erred

by failing to grant the motion to suppress based on Mr. Lopez-Torralba's invalid consent.  *Id.*

---

[13] Mr. Lopez-Torralba asserts that this statement was false, DI 1-1 at 33-34, and our independent review of this record confirms that Mr. Lopez-Torralba is right.  Although a car *battery* containing heroin was found in Ms. Basurto-Leal's basement, *see* DI 20-29 at 171-72, there is no evidence on the record that a subsequent search of Mr. Lopez-Torralba's car yielded additional heroin.  The trial court appears to have replicated Attorney Cullen's factual error in its December 14, 2016 opinion by citing Attorney Cullen's statement for the proposition that "[a] subsequent follow-up search of the Acura led to the discovery of more heroin concealed in the vehicle."  DI 1-1 at 148 (citing DI 1-1 at 53).  This statement is not supported by the record.

[14] When Judge Furber questioned the Government about "what specific and articulable facts" supported Mr. Lopez-Torralba's arrest, the government demurred, stating "we didn't put that in there because it was just consent to search" that the defense had challenged in its motion to suppress.  *See* DI 1-1 at 118-19.  At an evidentiary hearing held during state post-conviction proceedings, new counsel for Mr. Lopez-Torralba observed: "even Judge Furber numerous times paused and questioned that nobody was challenging the investigatory detention of Mr. Lopez-Torralba."  DI 20-29 at 613-14.

[15] When directly asked by Judge Furber for caselaw on the issue, Attorney Cullen was unable to cite any cases in support of his *Miranda* argument.  *See* DI 1-1 at 126.

Second, he argued that the trial court erred by failing to grant suppression of statements pursuant to *Miranda v. Arizona*.[16]  *Id.*  The trial court recommended that the Superior Court affirm the judgment of sentence, DI 13 at 13-23, and the Superior Court did affirm the judgment of sentence on July 3, 2017, *Id.* at 25-41.  The Superior Court considered nine factors to determine that Mr. Lopez-Torralba's consent was voluntary.  *Id.* at 32-40.  Mr. Lopez-Torralba did not seek leave to appeal to the Supreme Court of Pennsylvania.  DI 21 at 7.

C.    **State Post-Conviction**

On November 21, 2017, Mr. Lopez-Torralba filed a pro se petition pursuant to Pennsylvania's Post-Conviction Relief Act (PCRA), which was assigned to the Honorable Patricia Coonahan of the Montgomery County Court of Common Pleas.  DI 21 at 7; DI 1-2 at 5.  Mr. Lopez-Torralba brought five claims for PCRA relief, including a claim that Attorney Cullen was constitutionally ineffective for failing to argue at the suppression hearing that evidence against Mr. Lopez-Torralba must be suppressed because the police lacked probable cause to arrest him.  DI 20-34 at 288-89.  Mr. Lopez-Torralba's appointed PCRA counsel, Robert Adshead, filed a so-called "no-merits" letter pursuant to *Commonwealth v. Finley*.[17]  *Id.* at 24-52; DI 1-2 at 7.  Mr. Adshead characterized Mr. Lopez-Torralba's ineffective assistance of counsel claim as a repackaging of the argument that Mr. Lopez-Torralba's consent was invalid.  DI 20-34 at 30 (describing claim as: "Consent Invalid Due to Police Exploitation" following illegal arrest).  Mr. Adshead concluded that this argument lacked merit.[18]  *Id.* at 30-31.

---

[16] 384 U.S. 436 (1966).

[17] 550 A.2d 213 (Pa. Super. Ct. 1988).

[18] Mr. Adshead attached a letter from Attorney Cullen to his "no-merits" letter, which stated generally that "Mr. Lopez-Torralba understood and authorized all defenses and [t]rial

In April 2018, the PCRA court issued a notice of intent to dismiss Mr. Lopez-Torralba's petition. DI 1-2 at 8. Mr. Lopez-Torralba failed to object, and the PCRA court dismissed the petition in May. *Id.* However, the PCRA court ultimately vacated its dismissal order and allowed Mr. Lopez-Torralba to file a response to its notice of intent to dismiss, which Mr. Lopez-Torralba filed on June 1, 2018. *Id.* at 8-9. One week later, the PCRA court again dismissed his petition. *Id.* at 9.

On July 2, 2018, Mr. Lopez-Torralba filed a pro se notice of appeal of the PCRA court's dismissal. *Id.* On July 31, upon order of the Superior Court, Mr. Lopez-Torralba filed a concise statement of the errors complained of on appeal. *Id.* Almost a year later, on June 25, 2019, the Superior Court vacated the PCRA court's dismissal and ordered the trial court to hold an evidentiary hearing on Mr. Lopez-Torralba's claims of ineffective assistance of counsel. *Id.*; DI 20-34 at 475-83.

On July 31, Joseph Hylan, who had been newly appointed to represent Mr. Lopez-Torralba, filed an amended PCRA petition, which argued, among other things, that trial counsel was ineffective for failing to argue that police lacked probable cause to arrest Mr. Lopez-Torralba. DI 1-2 at 9-10; DI 20-34 at 471-74. The Government filed a motion to dismiss the amended petition. *See* DI 1-2 at 10-11; DI 20-34 at 501-08. At the hearing on the amended petition held on December 9, 2019, Mr. Hylan moved to withdraw as counsel. DI 1-2 at 10. The hearing was continued, and, the following day, the PCRA court appointed Gregory Dipippo to represent Mr. Lopez-Torralba. *Id.*

On March 3, 2020, the PCRA court held an evidentiary hearing on the amended PCRA

---

strategies." DI 20-34 at 37 (ECF). Otherwise, the letter only specifically addressed Mr. Lopez-Torralba's argument that Attorney Cullen should have called the confidential informant at trial. *See id.*

petition and the motion to dismiss.  *Id.* at 10-11.  Attorney Cullen and Mr. Lopez-Torralba

testified.  *See* DI 20-29 at 562.  Attorney Cullen testified that he and Mr. Lopez-Torralba

specifically discussed the decision not to challenge "the initial police interaction."  DI 20-29 at

568.  When asked for specifics about these discussions, Attorney Cullen described his general

approach to strategy discussions with clients.  *See id.* at 568-69 (Attorney Cullen explaining "the

way I generally practice" and "what I do . . . before any court" in response to questions about his

discussions with Mr. Lopez-Torralba); *see also id.* at 583 ("So this would have been part of a

general conversation with [Mr. Lopez-Torralba] and then a specific conversation where we

strategized together on what to pursue or not to pursue.").

 When asked why he abandoned the probable cause argument, Attorney Cullen testified

that challenging probable cause for Mr. Lopez-Torralba's arrest would have been "frivolous."

*Id.* at 569-70.  In arriving at this conclusion, Attorney Cullen stated that he drove by the scene of

the arrest and "cross-listed all the different reports to look for any inconsistencies, any

problems."  *Id.* at 579.  Finding no inconsistencies, Attorney Cullen "just balanced that against

the case law at the time" and concluded that there was probable cause.  *Id.*; *see also id.* at 581

("[Attorney Dipippo]: And it would be fair to say that you, after reviewing the materials,

concluded that there was probable cause for the stop? [Attorney Cullen]: I did.").

 After Attorney Cullen's testimony, Mr. Lopez-Torralba testified that Attorney Cullen

never explained why he abandoned the probable cause argument.  *Id.* at 592-93; *accord id.* at

588 ("[A]ll Mr. Sean Cullen told me was that he was filing the motion for suppress the evidence

based on unlawful arrest.").  Mr. Lopez-Torralba stated that, when the suppression hearing

began, he believed Attorney Cullen would be arguing that the police lacked probable cause to

arrest him.[19]  *Id.* at 593.

On June 8, 2020, the PCRA court granted the Government's motion to dismiss the

amended petition.  DI 1-2 at 11.  On July 14, Mr. Lopez-Torralba filed a pro se notice of appeal

of the dismissal of his amended PCRA petition, and Attorney Dipippo filed both a separate

notice of appeal on July 16 and a statement of matters complained of on appeal on July 30.  *Id.* at

12.  On August 25, Mr. Lopez-Torralba filed a petition requesting a remand for a hearing,

pursuant to *Commonwealth v. Grazier*,[20] to consider Mr. Lopez-Torralba's request to proceed

pro se.[21]  *See* DI 20-30 at 2.  The trial court granted Mr. Lopez-Torralba's request to proceed pro

se and granted him leave to file a supplemental statement of matters complained of on appeal.

DI 1-2 at 13-14; DI 20-31 at 18.

On November 13, 2020, Mr. Lopez-Torralba filed a supplemental statement of matters

complained of on appeal.  DI 1-2 at 15.  The pro se statement set forth three issues, only one of

which is relevant to the sole claim before us:

> (1) The PCRA court erred in denying relief based on trial counsel's
> proffered 'reason' for failing to request suppression of all evidence
> seized in this case and Defendant's statement because of
> exploitation of an illegal arrest in violation of the Fourth

---

[19] Mr. Lopez-Torralba may not have understood that Attorney Cullen was choosing to
make certain arguments and abandon others.  *See* DI 20-29 at 608-09 (explaining Mr. Lopez-
Torralba was not aware that the "supplemental" omnibus motion replaced original omnibus
motion).

[20] 570 A.2d 1054 (Pa. Super. Ct. 1990).

[21] On September 21, 2020, while the *Grazier* hearing was pending, the Superior Court
issued an order to show cause why Mr. Lopez-Torralba's appeal should not be quashed as
untimely.  DI 1-2 at 12.  Both Attorney Dipippo and Mr. Lopez-Torralba filed responses.  *See id.*
at 13.  Mr. Lopez-Torralba argued that his appeal was timely pursuant to the "prison mailbox"
rule.  *Id.* at 13-14.  The Superior Court remanded the timeliness issue to the PCRA court to
determine, after a hearing, whether the prisoner mailbox rule applied.  *Id.* at 14.  However,
because the Commonwealth did not object to the applicability of the prison mailbox rule, the
hearing was cancelled, and the appeal was deemed timely in October 2021.  *Id.* at 15.

> Amendment to the United States Constitution an[d] Article I,
> Section 8, of the Pennsylvania Constitution.
>
> The Defendant's seizure and transport to the Norristown Police
> Department clearly constituted a 'custodial detention' which must
> be supported by probable cause. At the March 3, 2020 PCRA
> hearing, trial counsel's testimony revealed that his action or
> inaction here was not based on [a] 'strategic reason' designed to
> effectuate Defendant's interest.  On direct examination, trial
> counsel testified he thought it would be frivolous to challenge the
> unlawful custodial detention.  Under cross-examination, trial
> counsel testified he believed Defendant's seizure was legal based
> on case law.  It is clear that an attorney's ignorance on a point of
> law that is fundamental to the case combined with counsel's failure
> to perform basic research on that point of law is a quintessential
> example of unreasonable performance under *Strickland v.
> Washington*, 466 U.S. 688 (1984).
>
> The conduct of the police in this case by forcibly transporting the
> Defendant to the Norristown Police Department without probable
> cause to elicit a 'consent' to search his vehicle, cell phone, home,
> and to coerce a statement from the Defendant was the identical
> unlawful police conduct the United States Supreme Court
> condemned in *Dunaway v. New York*.  Trial counsel's inaction here
> was based entirely on ignorance of the applicable precedents and
> thus devoid of any reasonable bases designed to effectuate the
> Defendant's interest.

*Id.* at 15-16 (internal citations omitted).

On December 6, 2021, the PCRA court issued an opinion requesting that the Superior

Court deny Mr. Lopez-Torralba's appeal.  *See id.* at 24.  In that opinion, Judge Coonahan applied

the test from *Commonwealth v. Natividad*[22] to Mr. Lopez-Torralba's ineffective assistance

claims, namely that trial counsel is presumed to be effective unless a PCRA petitioner pleads and

proves: (1) the underlying claim is arguably meritorious; (2) trial counsel's action or omission

lacked any objectively reasonable basis designed to effectuate his client's interest; and (3)

prejudice.  *Id.* at 19.  Upon consideration of Attorney Cullen's testimony at the March 3, 2020

---

[22] 938 A.2d 310 (Pa. 2007)

evidentiary hearing, the PCRA court concluded that Mr. Lopez-Torralba "fail[ed] to meet all of the [*Natividad*] factors," particularly noting that Mr. Lopez-Torralba had not shown that the alternative strategy of challenging probable cause offered a "substantially greater" potential for success than the course pursued, as required by case law in Pennsylvania. *Id.* at 19-21.

Both Mr. Lopez-Torralba and the Government filed supplemental briefs with the Superior Court in response to the PCRA court's opinion. *Id.* at 28 n.1 (ECF). In affirming the PCRA court's dismissal of Mr. Lopez-Torralba's amended PCRA petition on March 24, 2022, the Superior Court wrote: "Because the police possessed probable cause to believe that [Mr.] Lopez-Torralba was engaged in the unlawful sale and distribution of illegal narcotics when they took him into custody, he is entitled to no relief." *Id.* at 30. The Superior Court summed up the facts giving rise to probable cause as follows:

> A reliable [confidential informant] contacted a connection in Mexico, which led the [confidential informant] to contact [Ms.] Basurto-Leal to arrange for the purchase of a large quantity of heroin. [Mr.] Lopez-Torralba was subsequently seen in the company of [Ms.] Basurto-Leal, driving in a car and entering and exiting her home, both in her company and alone. [Ms.] Basurto-Leal was observed parked at Chili's, where the [confidential informant] had arranged to meet her to purchase the heroin. Finally, [Mr.] Lopez-Torralba was seen exiting [Ms.] Basurto-Leal's home with, what appeared to a trained narcotics officer, to be a brick of heroin.

*Id.* at 34. Because the Superior Court concluded that probable cause existed to arrest Mr. Lopez-Torralba, it found that his claim of ineffective assistance for failure to challenge the existence of probable cause lacked arguable merit, and "counsel cannot be deemed ineffective for failing to raise it." *Id.* (citing *Commonwealth v. Koehler*, 36 A.3d 121, 140 (Pa. 2012)). Mr. Lopez-Torralba did not appeal to the Pennsylvania Supreme Court. DI 21 at 12.

### D.      Federal Proceedings

On July 1, 2022, Mr. Lopez-Torralba filed the present petition for a writ of habeas

corpus, which was originally before the late Honorable Gene E.K. Pratter.  DI 1 at 1.[23]  Mr.

Lopez-Torralba brings a single ground for relief in his federal petition:

> Trial counsel rendered constitutionally ineffective assistance in
> failing to request suppression of evidence seized and statement
> made by petitioner based on exploitation by the police of an
> unlawful custodial detention/arrest in violation of Article I, Section
> 8, of the Pennsylvania Constitution and the Fourth Amendment to
> the United States Constitution.

DI 1-1 at 22 (capitalization removed).  Respondents filed a brief in opposition to Mr. Lopez-

Torralba's federal petition on November 7, 2022.  DI 13.

Judge Pratter referred the petition to the Honorable Richard Lloret for a Report &

Recommendation, DI 4, and the Clerk of Court subsequently reassigned the case to Magistrate

Judge Straw, DI 12.  On October 18, 2023, Magistrate Judge Straw issued a Report and

Recommendation, which recommended denying relief and denying a certificate of appealability.

DI 21.  Mr. Lopez-Torralba timely filed objections to the Report & Recommendation. DI 22, 23,

24.  Upon our careful review, we adopt in part Judge Straw's Report & Recommendation.

## II.     Legal Standard

### A.      Section 2254

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), an individual in state

custody may petition a federal court for a writ of habeas corpus "only on the ground that he is in

---

[23] Mr. Lopez-Torralba's petition is dated July 1, 2022, but it was filed by the Clerk of Court on July 11, 2022.  *See* DI 1 at 1-2.  Because Mr. Lopez-Torralba is incarcerated, the mailbox rule applies, and we deem July 1 — the date Mr. Lopez-Torralba gave the petition to prison officials for mailing — as the filing date of the petition.  *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).

custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §

2254(a).  Generally, the petitioner must first exhaust state-court remedies.  *See* 28 U.S.C. §

2254(b)(1)(A).  The exhaustion requirement "ensures that state courts have the first opportunity

to review federal constitutional challenges to state convictions and preserves the role of state

courts in protecting federally guaranteed rights."  *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir.

2000) (citation omitted).  To satisfy exhaustion, the petitioner must "fairly present[]" the "federal

claim's factual and legal substance to the state courts in a manner that puts them on notice that a

federal claim is being asserted."  *Greene v. Palakovich*, 606 F.3d 85, 93 (3d Cir. 2010) (quoting

*McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).  This is achieved "by invoking one

complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526

U.S. 838, 845 (1999).  In Pennsylvania, this means presenting the claim through the Superior

Court on direct or collateral review.  *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir.

2004).

Even when a petitioner has exhausted the remedies available in state courts, a federal

court may not issue a writ of habeas corpus unless the state-court adjudication of the claim

either:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  Under § 2254(d)(1), "[a] state-court decision that correctly identifies the

governing legal rule but applies it unreasonably to the facts" constitutes an "unreasonable

application" of federal law.  *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000).  "Stated simply, a

federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. Importantly, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (original emphasis).  A federal court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.  Finally, the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" means "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412.

State-court factual determinations are afforded significant deference under AEDPA.  *See* 28 U.S.C. §§ 2254(d)(1), 2254(e)(1).  Interpreting § 2254(d)(2), the Supreme Court has explained that a state-court adjudication of a claim on the merits that is based on a finding of fact "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.  And, under § 2254(e)(1), state-court factual determinations are presumed to be correct. *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (citing *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001)); *see also* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct.").  The petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Eley*, 712 F.3d at 846 (quoting *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

## B.     Ineffective Assistance of Counsel

The Sixth Amendment requires that individuals accused of crimes receive the effective

assistance of counsel for their defense.  *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984).

"That a person who happens to be a lawyer is present at trial alongside the accused . . . is not

enough to satisfy the constitutional command."  *Id.* at 685.  In our adversarial system, the

Constitution "recognizes the right to the assistance of counsel because it envisions counsel's

playing a role that is critical to the ability of the adversarial system to produce just results."  *Id.*

When the system is functioning properly, effective counsel "plays the role necessary to ensure

that the trial is fair."  *Id.*

To demonstrate ineffective assistance of counsel, the petitioner must show both (1) that

counsel was deficient and (2) that counsel's deficiency was prejudicial to the defense.  *See id.* at

687-88.  To demonstrate deficiency, the petitioner "must show that counsel's representation fell

below an objective standard of reasonableness."  *Id.* at 688.  There is a "'strong presumption'

that counsel's representation was within the 'wide range' of reasonable professional assistance."

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689).  To

overcome this presumption, the petitioner must show "that counsel made errors so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment."  *Id.* (quoting *Strickland*, 466 U.S. at 687).

Among other things, the 'counsel' guaranteed by the Sixth Amendment has a "duty to

investigate."  *See Strickland*, 466 U.S. at 690.  Although "strategic choices made after thorough

investigation of law and facts relevant to plausible options are virtually unchallengeable[,] . . .

strategic choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on investigation."  *Id.* at

690-91.  Because the function of defense counsel "is to make the adversarial testing process

work in the particular case," and "that testing process generally will not function properly unless

defense counsel has done some investigation into the prosecution's case and into various defense strategies," defense counsel must "make reasonable investigations or . . . make a reasonable decision that makes particular investigations unnecessary." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (quoting *Strickland*, 466 U.S. at 690-91).  Thus, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691; *accord Kimmelman*, 477 U.S. at 386-87 (finding deficiency in consideration of defense counsel's "total failure to conduct pre-trial discovery, and one as to which counsel offered only implausible explanations").

To demonstrate prejudice, the petitioner "must show . . . a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Reasonable probability means "a probability sufficient to undermine confidence in the outcome." *Id.*  This "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Richter*, 562 U.S. at 112).

When considering *Strickland* in the context of a petition brought under § 2254, we are "doubly deferential." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).  This means that we give "both the state court and the defense attorney the benefit of the doubt." *Id.* (citing *Cullen*, 563 U.S. at 190).  In other words, "[w]e take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." *Cullen*, 563 U.S. at 190 (quotations and citations omitted).  Under this doubly deferential standard of review, to obtain habeas relief on a *Strickland* claim that was rejected on the merits by a state court, the petitioner must demonstrate that the state-court adjudication was "necessarily unreasonable." *See id.*

### 1.     Fourth Amendment

When "an assertion of ineffective assistance of counsel is based upon the failure to pursue a suppression motion, proof of the merit of the underlying suppression claim is necessary to establish the merit of the ineffective assistance of counsel claim." *Commonwealth v. Carelli*, 546 A.2d 1185, 1189 (Pa. Super. Ct. 1988) (citations omitted); *see Kimmelman*, 477 U.S. at 382.

The Fourth Amendment protects against "unreasonable searches and seizures."  U.S. Const. Amend. IV.  At trial, once a defendant establishes that a search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable.  *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).  If an officer has probable cause to believe the suspect has committed a crime in the officer's presence, a warrantless arrest is reasonable.  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  Although police officers may conduct a short investigatory stop upon "reasonable, articulable suspicion that criminal activity is afoot," *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000), longer and more intrusive detentions require probable cause, *see United States v. Sharpe*, 470 U.S. 675, 685-86 (1985).

"Probable cause exists when 'reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested.'"  *Wilson v. City of Philadelphia*, 177 F. Supp. 3d 885, 917 (E.D. Pa. 2016) (quoting *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002)).  Probable cause requires more than a "mere suspicion," but it does not require enough evidence to prove guilt beyond a reasonable doubt.  *Id.* (quoting *United States v. Glasser*, 750 F.2d 1197, 1205 (3d Cir. 1984)).  To determine whether probable cause for an arrest exists, "we examine the events leading up to the arrest, and then decide whether these

historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018) (cleaned up) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).  "Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily or even usefully, reduced to a neat set of legal rules."  *Id.* at 57 (cleaned up).

## C.     Certificate of Appealability

Under AEDPA, a petitioner does not have an automatic right to appeal the denial of their petition for a writ of habeas corpus.  *See* 28 U.S.C. § 2253(c).  An appeal may only be taken upon the issuance of a "certificate of appealability."  *See id.*  However, "[a] certificate of appealability may issue only upon 'a substantial showing of the denial of a constitutional right.'" *Szuchon v. Lehman*, 273 F.3d 299, 312 (3d Cir. 2001) (quoting 28 U.S.C. § 2253(c)(2)).  If the district court rejects the petitioner's constitutional claim on its merits, then in order to obtain a certificate of appealability, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* (quoting *Slack*, 529 U.S. at 484).  Alternatively, a certificate of appealability may issue when "the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529 U.S. at 484).

## III.     Discussion

### A.     Exhaustion

Mr. Lopez-Torralba has exhausted the single claim contained in his federal habeas petition.  Mr. Lopez-Torralba's pro se PCRA petition argued that his trial counsel, Attorney Cullen, was ineffective for failing to argue that the police lacked probable cause to arrest him. *See* DI 20-34 at 289.  His counseled, amended PCRA petition argued the same.  *See id.* at 472-

73.  Thus, the state courts were put "on notice that a federal claim [was] being asserted." *Greene*, 606 F.3d at 93.

Mr. Lopez-Torralba's federal claim also went through "one complete round of [Pennsylvania's] established appellate review process." *O'Sullivan*, 526 U.S. at 845.  Judge Coonahan of the Montgomery County Court of Common Pleas reviewed the claim, *see* DI 1-2 at 18-21, and the Superior Court of Pennsylvania reviewed the claim, *see id.* at 27-34.  Although Mr. Lopez-Torralba did not appeal to the Pennsylvania Supreme Court, "petitioners need not seek review from the Pennsylvania Supreme Court in order to give the Pennsylvania courts a full opportunity to resolve any constitutional claims." *Lambert*, 387 F.3d at 233-34 (internal quotation marks omitted).  And the Government does not argue Mr. Lopez-Torralba has failed to exhaust.  Thus, Mr. Lopez-Torralba's Sixth Amendment claim is exhausted.

**B.    Section 2254**

Mr. Lopez-Torralba argues that the state-court adjudication of his Sixth Amendment claim "involved an unreasonable application of" two Supreme Court precedents: *Dunaway v. New York*[24] and *Strickland v. Washington*.[25]  DI 1-1 at 21.  We briefly explain why *Dunaway* was not unreasonably applied before focusing on *Strickland*.

**1.    *Dunaway v. New York***

The Superior Court of Pennsylvania did not unreasonably apply the holding of *Dunaway v. New York* to Mr. Lopez-Torralba's case.  In *Dunaway*, the Government conceded that police lacked probable cause when they took Mr. Dunaway into custody and transported him to the police station, but the Government asked the Supreme Court to approve the detention anyway.

---

[24] 442 U.S. 200 (1979).

[25] 466 U.S. 668 (1984).

*See Dunaway*, 442 U.S at 206-07.  Declining the Government's request, the Supreme Court held

that the police violated the Fourth Amendment "when, *without probable cause*, they seized

petitioner and transported him to the police station for interrogation." *Id.* at 216.  Here, the

Superior Court found that the police *possessed* probable cause when they took Mr. Lopez-

Torralba into custody and transported him to the police station.  *See* DI 1-2 at 30-34.  The main

issue in *Dunaway* was not whether probable cause existed (it concededly did not); the main issue

was whether Mr. Dunaway's detention was the type that needed to be supported by probable

cause.  *See Dunaway*, 442 U.S. at 207-16.  The Supreme Court concluded that it was.  *Id.* at 216.

By contrast, the main issue in Mr. Lopez-Torralba's case is not whether Mr. Lopez-Torralba's

detention was the type that needed to be supported by probable cause (the Superior Court

assumed that it was);[26] the main issue was whether probable cause existed.  *See* DI 1-2 at 30-34.

The Superior Court reasonably applied the holding of *Dunaway* to Mr. Lopez-Torralba's arrest

by determining that the Fourth Amendment was not violated because the police possessed

probable cause.

### 2.      Ineffective Assistance of Counsel

First, the Superior Court applied the correct test when analyzing Mr. Lopez-Torralba's

Sixth Amendment claim.  That court cited Pennsylvania's test for ineffective assistance of

---

[26] The Superior Court appeared to find that, when police handcuffed Mr. Lopez-Torralba and placed him in the back of a patrol car, this constituted an arrest requiring probable cause. *See* DI 1-2 at 30 (stating police "took [Mr. Lopez-Torralba] into custody" and possessed probable cause).  To the extent that this was not an explicit finding by the Superior Court, we find that Mr. Lopez-Torralba was arrested when he was removed from his vehicle, frisked, put in handcuffs, and placed in the back of a police vehicle for at least ten minutes.  *Cf. Commonwealth v. Edney*, No. 1274 EDA 2012, 2013 WL 11284322, at *7 (Pa. Super. Ct. Jan. 11, 2013) ("We find that a reasonably objective person who is made to exit his vehicle, frisked, put in handcuffs, and ordered into the back of a police car and is told that police are investigating a drug transaction would believe he is in custody.").

counsel, *see* DI 1-2 at 29, and "the standard for ineffective assistance of counsel under

Pennsylvania law . . . is the same as *Strickland*'s standard."  *Boyd v. Waymart*, 579 F.3d 330, 334

n.2 (3d Cir. 2009) (en banc) (Scirica, C.J., concurring) (citing *Commonwealth v. Tedford*, 960

A.2d 1, 12 (Pa. 2008)).  Specifically, the Superior Court stated: "[c]ounsel is presumed to be

effective, and 'the burden of demonstrating ineffectiveness rests on'" the petitioner.  DI 1-2 at 29

(quoting *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. Ct. 2010)).  To meet this

burden, the Superior Court explained, the petitioner must demonstrate by a preponderance of the

evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular
> course of conduct pursued by counsel did not have some
> reasonable basis designed to effectuate his interests; and, (3) but
> for counsel's ineffectiveness, there is a reasonable probability that
> the outcome of the challenged proceeding would have been
> different.

*Id.* (quoting *Commonwealth v. Holt*, 175 A.3d 1014, 1018 (Pa. Super. Ct. 2017)).  Finally, the

Superior Court rightly explained, when an ineffective assistance of counsel claim is premised on

the failure to move for suppression, "proof of the merit of the underlying suppression claim is

necessary to establish the merit of the ineffective assistance of counsel claim."  *Id.* (citing

*Carelli*, 546 A.2d at 1189); *accord Commonwealth v. Robinson*, 311 A.3d 598 (Table), 2023 WL

8805693, at *4 (Pa. Super. Ct. 2023) ("[A]lthough the failure to file a suppression motion under

some circumstances may be evidence of ineffectiveness . . . of counsel, if the grounds

underpinning that motion are without merit, counsel will not be deemed ineffective 'for failing to

so move.'" (quoting *Commonwealth v. Watley*, 153 A.3d 1034, 1044 (Pa. Super. Ct. 2016))).

 Mr. Lopez-Torralba asserts that his trial counsel was ineffective for failing to move for

suppression based on the argument that police lacked probable cause for his arrest.  *See* DI 20-34

at 289; DI 1-1 at 24-25.  Thus, under Pennsylvania law, Mr. Lopez-Torralba must prove the

merit of this suppression argument.  *See Carelli*, 546 A.2d at 1189.  The Superior Court

concluded that he could not prove the merit of this suppression argument because the police

possessed probable cause to arrest Mr. Lopez-Torralba.  DI 1-2 at 30-34.  And, under AEDPA,

we are required to defer to the Superior Court unless its decision "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States."  28 U.S.C. § 2254(d)(1).  In fact, we must be "doubly deferential,"

both to trial counsel's decision not to make this suppression argument *and* to the Superior

Court's probable cause determination.  *See Burt*, 571 U.S. at 15.  Mr. Lopez-Torralba has not

met this "difficult to meet" standard.  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (citation

omitted).

      This conclusion is not inescapable.  A close examination of trial counsel's decision not to

pursue this suppression argument reveals a disquieting picture.  Mr. Lopez-Torralba testified that

he showed up to the suppression hearing under the impression that his attorney was going to

argue that the police lacked probable cause for his arrest.  DI 20-29 at 592-93, 588.  Though

Attorney Cullen stated that he and Mr. Lopez-Torralba had discussed abandoning that argument,

Attorney Cullen could not describe specifics of that conversation.  *Id.* at 568-69, 583.  In any

case, moments into that hearing, Attorney Cullen made a false and highly prejudicial statement

to the trial court, namely that heroin was found in Mr. Lopez-Torralba's car.[27]  *See* DI 1-1 at 53.

---

[27] This factual error tends to demonstrate trial counsel's lack of familiarity with the
factual record in this case, but it is ultimately irrelevant to the probable cause analysis because
"probable cause determinations must be evaluated according to the information the police knew
at the moment of the challenged conduct, not information learned for the first time afterwards."
*United States v. Butler*, 93 F. Supp. 3d 392, 402 (W.D. Pa. 2015) (citation omitted); *Beck v. State
of Ohio*, 379 U.S. 89, 91 (1964).  Even if a later search of the Acura had yielded drugs, that
search would have post-dated Mr. Lopez-Torralba's arrest, so this attorney error, though
prejudicial in a general sense, would not have tainted a Fourth Amendment analysis.  *Accord* DI

Later in the hearing, the trial judge specifically inquired about probable cause, asking the Government what "specific and articulable facts" supported Mr. Lopez-Torralba's arrest.  *See id.* at 118-19.  The prosecutor avoided the question, stating that the Government "didn't put that in" its briefing because Attorney Cullen had only challenged Mr. Lopez-Torralba's "consent to search," and Attorney Cullen did nothing to press the Government on the issue.  *See id.* Notwithstanding the trial court's apparent interest in the issue, Attorney Cullen did not pursue it because he had already concluded a probable cause argument would be "frivolous."  DI 20-29 at 569.  He came to this conclusion after a minimal investigation: he drove by the location where the arrest took place, "went through and cross-listed all the different reports," and "just balanced that against the case law at the time."  *Id.* at 579.  Attorney Cullen did not mention any specific cases he reviewed.[28]

Mr. Lopez-Torralba's pro se petition for a writ of habeas corpus cited several cases that, while not dispositive, cast doubt on Attorney Cullen's conclusion that a probable cause argument would have been "frivolous."  DI 1-1 at 29-32.  In *United States v. Cardona*, a confidential

---

1-2 at 30-34 (finding probable cause existed to arrest Mr. Lopez-Torralba without referencing heroin found after he was taken into custody).

[28] By contrast, Attorney Cullen supplied a specific basis for declining to move for the disclosure of the identity of the confidential informant — a predicate for ineffective assistance of counsel that Mr. Lopez-Torralba raised in state post-conviction but does not include in his federal petition.  *See* DI 20-29 at 573-75.  Attorney Cullen explained that, through his representation of another individual, he had become aware of a much larger government drug investigation than the one that led to Mr. Lopez-Torralba's arrest.  *Id.*  Because Mr. Lopez-Torralba's defense was premised on being "an unwitting" member of the drug distribution scheme, Attorney Cullen decided not to force the disclosure of the informant's identity because it could have implicated Mr. Lopez-Torralba in the larger government drug investigation.  *See id.* While this explanation is much more *specific* than Attorney Cullen's explanation for abandoning the probable-cause argument, we also note that this explanation may toe the line of a reasonable limitation on investigation under *Strickland*.  *See Strickland*, 466 U.S. at 691 ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

informant told the police that Mr. Cardona "sold large amounts of heroin and cocaine," that the informant had witnessed Mr. Cardona's drug transactions in the past, and that Mr. Cardona carried a small, blue bag containing contraband. *See United States v. Cardona*, No. 13-199, 2013 WL 5924980, at *1 (E.D. Pa. Nov. 5, 2013). Police surveilled Mr. Cardona's home and, on two consecutive days, observed him and another individual leave the home while Mr. Cardona carried a small, blue bag. *Id.* at *2. On the third day of surveillance, Mr. Cardona again left with the same individual, who placed two full trash bags in the trunk, and began "driving erratically and checking his mirrors." *Id.* Just as in Mr. Lopez-Torralba's case, officers pulled the car over, patted Mr. Cardona down, found nothing, handcuffed him, and placed him in a police vehicle. *Id.* at *3. The presiding judge found that officers lacked both reasonable articulable suspicion for the stop and probable cause for the arrest. *See id.* at *4-9.

In *United States v. Ceballos*, a confidential informant of "known reliability" led the police to establish surveillance of an apartment, make an arrest based on transactions they observed there, and determine that the drug operation had moved to a second apartment. *United States v. Ceballos*, 654 F.2d 177, 178-79 (2d Cir. 1981). Officers observed a man pull up to the second apartment, look both directions "in a curious manner," enter the apartment empty-handed, and leave five or ten minutes later with a small brown paper bag while "look[ing] in all directions." *Id.* at 179. The Second Circuit found that police lacked probable cause to arrest him. *Id.* at 184-86.

In *United States v. Ingrao*, as part of an investigation into a known narcotics trafficker, police officers surveilled a residence that shared a gangway with a second residence. *United States v. Ingrao*, 897 F.2d 860, 861, 863 (7th Cir. 1990). A red Corvette pulled up, and a third party walked down the gangway and handed the occupants of the Corvette a gym bag. *Id.* at

861.  Half an hour later, the defendant walked down the gangway carrying a black bag, placed

the bag in the trunk of his car, and drove to a club that the known narcotics trafficker had visited

earlier in the day.  *Id.*  Meanwhile, the Corvette had returned to the gangway and retrieved a

second package from the same third party.  *Id.*  The Seventh Circuit concluded that police lacked

probable cause to arrest the defendant from the club.  *Id.* at 865-66.

    And in *United States v. Butler*, officers were preparing to execute a search warrant on

Harry Simpson's apartment when Mr. Simpson and an unknown individual pulled up to the

apartment building at about the same time.  *United States v. Butler*, 93 F. Supp. 3d 392, 394-95

(W.D. Pa. 2015).  The unknown individual, later identified as the defendant Gary Butler, walked

towards Mr. Simpson's car, and shook his hand.  *Id.* at 395.  Mr. Simpson opened the trunk of

his car and handed out yellow bags to Mr. Butler and two other unidentified men.  *Id.*  The

unidentified men left, and the pair entered the apartment building.  *See id.* at 395-96.  About five

minutes later the pair walked out of the apartment building, and Mr. Butler was holding a yellow

plastic bag, "possibly" the same one Mr. Simpson had handed him earlier.  *Id.* at 396.  Butler

placed the bag in his car, had a brief conversation with Mr. Simpson, and drove away.  *Id.*  Police

arrested him moments later.  *See id.*  The district court found that police lacked probable cause to

arrest Mr. Butler.  *Id.* at 401.

    Of course, none of these federal precedents would be binding on the state trial court, but

they could certainly have been persuasive authority for a probable cause argument.  And Mr.

Lopez-Torralba also cites several state-court decisions in his pro se petition that arguably militate

against the conclusion that a probable-cause argument would have been "frivolous."  *See, e.g.*,

*Commonwealth v. Newman*, 84 A.3d 1072, 1079-80 (Pa. Super. Ct. 2014) (finding no probable

cause to arrest individual who received "an ordinary grocery bag" from person suspected of

distributing drugs); *Commonwealth v. Whitlock*, 69 A.3d 635, 639-40 (Pa. Super. Ct. 2013)

(finding no probable cause to search bucket where experienced narcotics investigator observed

defendant place "five opaque objects, wrapped in newspaper or magazine paper and taped

together"); *Commonwealth v. Greber*, 385 A.2d 1313, 1315-16 (Pa. 1978) (finding no probable

cause to arrest juvenile who approached a Ford Mustang in a parking lot in a high crime area,

received a bag from the Mustang occupant and held the bag to his face "as if to smell it," took

out is his wallet, handed something to the Mustang occupant, and walked away); *but see*

*Commonwealth v. Edney*, No. 1274 EDA 2012, 2013 WL 11284322, at *1, *7 (Pa. Super. Ct.

Jan. 11, 2013) (finding probable cause where reliable informant phoned to purchase crack

cocaine in presence of detective and stated dealer would arrive in fifteen minutes[29] in a black

Chevy Tahoe, a series of calls with dealer over one hour altered meeting place and time, and

black Chevy Tahoe pulled into parking lot where dealer on phone said he would be).

An adversarial testing process of the applicability of these cases to Mr. Lopez-Torralba's

arrest may have yielded the conclusion that they are distinguishable or unpersuasive, but that

process did not occur here because Attorney Cullen, for vague reasons, elected not to even argue

the issue.[30]  The point here is not that these cases definitively demonstrate that the police lacked

---

[29] One fact in Mr. Lopez-Torralba's case that has never been analyzed is the fact that Mr. Lopez-Torralba was arrested *two hours* after he was observed emerging from 831 George Street with Ms. Basurto-Leal while holding a plastic bag that officers suspected to be narcotics. *Cf. Commonwealth v. Dennis*, 618 A.2d 972, 981 (Pa. Super. Ct. 1992) ("It is well established in this Commonwealth that stale information cannot supply the probable cause necessary for the issuance of a search warrant.  If, however, it is demonstrated that criminal conduct has in fact continued, then the relevant information, in spite of its vintage, may not be deemed stale." (quoting *Commonwealth v. Eazer*, 312 A.2d 398, 399 (Pa. 1973))).  We note that, in the two hours between this observation and his arrest, Mr. Lopez-Torralba left Ms. Basurto-Leal, and she went alone to the Chili's parking lot where the sale of heroin was set to take place.

probable cause to arrest Mr. Lopez-Torralba — they do not.  The point is that these cases could reasonably be read to demonstrate that Attorney Cullen abdicated his role as 'counsel' in the adversarial system by pre-judging a potentially meritorious argument as "frivolous"[31] without fulfilling his duty to investigate the merits of that argument.  *See Strickland*, 466 U.S. at 690-91.  The Supreme Court has explained that "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*."  *Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (citations omitted).  Attorney Cullen's vaguely reasoned conclusion that the probable-cause issue was "frivolous" could reasonably be interpreted as evidence that he was ignorant of the relevant probable-cause precedents and failed to research them.  As a result, the merits of the probable-cause issue were not subjected to the adversarial process.  *Cf. Strickland*, 466 U.S. at 685 ("[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding.").

This lack of adversarial testing is apparent in the Superior Court's adjudication of Mr. Lopez-Torralba's ineffective assistance of counsel claim.  The Superior Court did not compare the facts of Mr. Lopez-Torralba's arrest to the facts of any other case.  *See* DI 1-2 at 30-34.  Instead, the court cited the probable cause standard, recounted the facts of Mr. Lopez-Torralba's

---

[30] Given that Attorney Cullen could have made the probable-cause argument in the alternative to his consent argument, we struggle to discern "an objectively reasonable basis designed to effectuate [Mr. Torralba's] interest" for declining to pursue it at all.  *Commonwealth v. Natividad*, 938 A.2d 310, 321 (Pa. 2007).

[31] Although we do not analyze any aspect of Mr. Lopez-Torralba's claim under the rubric of Rule 11, it is noteworthy that the federal rules allow attorneys to advance only claims that are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).  It appears that a probable-cause argument based on the facts of Mr. Lopez-Torralba's case would fit comfortably within this requirement.

case, and concluded: "[b]ased upon the totality of the circumstances . . . Det[ective] Wood

possessed probable cause to suspect that : (1) illegal narcotics trafficking was occurring and (2)

[Mr.] Lopez-Torralba was involved." *Id.* at 34 (citing *Commonwealth v. Dennis*, 612 A.2d 1014,

1015-16 (Pa. Super. Ct. 1992)).  The Superior Court then listed the following facts, upon which

it presumably relied:

> A reliable [confidential informant] contacted a connection in
> Mexico, which led the [confidential informant] to contact [Ms.]
> Basurto-Leal to arrange for the purchase of a large quantity of
> heroin.  [Mr.] Lopez-Torralba was subsequently seen in the
> company of [Ms.] Basurto-Leal, driving in a car and entering and
> exiting her home, both in her company and alone.  [Ms.] Basurto-
> Leal was observed parked at Chili's, where the [confidential
> informant] had arranged to meet her to purchase the heroin.
> Finally, [Mr.] Lopez-Torralba was seen exiting [Ms.] Basurto-
> Leal's home with, what appeared to a trained narcotics officer, to
> be a brick of heroin.[32]

*Id.* at 34.

From the prosecutor who side-stepped Judge Furber's request for "specific and

articulable facts" during the suppression hearing, DI 1-1 at 118-19, to the defense attorney who

vaguely concluded that the probable-cause argument was "frivolous," DI 20-29 at 569, to the

post-conviction attorney who declared that his client's Sixth Amendment argument had "no

merit," DI 20-34 at 31, to the Superior Court that found "the totality of the circumstances"

furnished probable cause, DI 1-2 at 34, the probable-cause issue has dodged meaningful

---

[32] We note that these particular facts appear to have much more to do with Ms. Basurto-
Leal than with Mr. Lopez-Torralba.  *Cf. Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's
mere propinquity to others independently suspected for criminal activity does not, without more,
give rise to probable cause to search [or seize] that person.").

adversarial testing from the outset of Mr. Lopez-Torralba's case.[33]

Nonetheless, AEDPA and *Strickland* require us to "doubly defer[]" — both to Mr. Lopez-Torralba's trial counsel, who elected not to argue the probable-cause issue, and to the Superior Court, which resolved that argument on its merits. *Burt*, 571 U.S. at 15; *see* 28 U.S.C. § 2254(d)(1); *Strickland*, 466 U.S. at 689. The relevant question is not whether we would reach the same conclusion as the Superior Court, but whether the Superior Court unreasonably applied clearly established federal law. *See Williams*, 529 U.S. at 411. Although we are concerned that Attorney Cullen may have unreasonably failed to investigate his client's probable cause argument before abandoning it, we cannot conclude against these layers of deference that the Superior Court's finding of probable cause, and thus its conclusion regarding ineffective assistance of counsel, were "necessarily unreasonable." *Cullen*, 563 U.S. at 190. Thus, we deny Mr. Lopez-Torralba's petition.

### 3.    Certificate of Appealability

Mr. Lopez-Torralba has made a substantial showing that he was denied his Sixth Amendment right to assistance of counsel, and we find that "jurists could conclude the issues

---

[33] One result of this lack of adversarial testing is that the prejudice prong of the *Strickland* test has not been fully analyzed. The Superior Court reviewing the denial of Mr. Lopez-Torralba's PCRA petition did not discuss the prejudice requirement. *See* DI 1-2 at 27-42. Judge Coonahan's opinion dismissing the PCRA petition summarized the testimony of Attorney Cullen from the evidentiary hearing and then stated: "[t]herefore, Defendant fails to meet all of the [*Natividad*] factors set [out] above," including prejudice. DI 1-2 at 20-21. It is unclear based on this analysis what testimony from Attorney Cullen is related to which prong and why. In fact, the cited testimony only appears relevant to the deficiency prong of *Strickland*. *See id.* at 20. On the other hand, Mr. Lopez-Torralba argues that he has demonstrated prejudice because, without the evidence obtained from his apartment, the testimony of Ms. Basurto-Leal would have been uncorroborated. DI 1-1 at 34-35. Additionally, Mr. Lopez-Torralba was found guilty of *two* counts of possession with intent to distribute and conspiracy to do the same—presumably one was premised on the heroin in his apartment and the other on the heroin in the car battery. *See* DI 1-2 at 5. Failure to suppress the heroin from the apartment would almost certainly prejudice Mr. Lopez-Torralba as to the counts premised thereupon.

presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. This conclusion is especially warranted in light of the undeveloped nature of the probable cause issue here and trial counsel's unclear basis for declining to pursue it. To be clear, though, the constitutional issue that deserves encouragement to proceed further is Mr. Lopez-Torralba's Sixth Amendment claim for ineffective assistance of counsel. Counsel has a duty to investigate issues of both law and fact. *Strickland*, 466 U.S. at 690. And it is quintessentially unreasonable for an attorney who is ignorant on a point of law to fail to research it. *Hinton*, 571 U.S. at 274. Mr. Lopez-Torralba has made a "substantial showing of the denial of" his Sixth Amendment right to the effective assistance of counsel because he has made a substantial showing that his trial attorney failed to investigate a potentially meritorious suppression argument. *Szuchon*, 273 F.3d at 312. Thus, we grant a certificate of appealability.

Nonetheless, we close by cautioning Mr. Lopez-Torralba that, even if he succeeds in demonstrating that the Superior Court's decision resulted in an unreasonable application of *Strickland*'s duty-to-investigate holding, there is considerable additional ground to be covered before he is entitled to a writ of habeas corpus. First, Mr. Lopez-Torralba must demonstrate that the "alternative not chosen offered a potential for success substantially greater than the course actually pursued" by his trial counsel. *Koehler*, 36 A.3d at 132 (citation omitted). Though trial counsel did not make the straightforward probable cause argument at the suppression hearing, he did argue for suppression in a "multi-folded" argument involving consent and *Miranda*. DI 1-1 at 107; *see* DI 13 at 30. Analyzing the consent issue at the direct appeal stage, the Superior Court applied Pennsylvania's nine-factor test for consent and determined that seven of nine

factors weighed in favor of finding that Mr. Lopez-Torralba voluntarily consented.[34]  DI 13 at

32-38.  Analyzing the *Miranda* issue, the court found that the challenged questions were so-

called "routine booking questions," *id.* at 40 (citing *Pennsylvania v. Muniz*, 496 U.S. 582, 601

(1990)), and that Mr. Lopez-Torralba was never subjected to custodial interrogation, *id.*  In

addition to more fully developing the probable-cause issue, it will be Mr. Lopez-Torralba's

burden to demonstrate by a preponderance of the evidence that the probable-cause argument had

a "substantially greater" potential for success than counsel's "multi-folded" consent and *Miranda*

arguments.  *See Koehler*, 36 A.3d at 132.

　　Second, Mr. Lopez-Torralba must demonstrate prejudice, or "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been

different."  *Strickland*, 466 U.S. at 694.  Of course, suppression of the heroin found in Mr.

---

[34] In Pennsylvania, nine non-exclusive factors "are pertinent to a determination of whether consent to search is voluntarily given," namely:

> 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) whether the person has been told that he is free to leave; and 9) whether the citizen has been informed that he is not required to consent to the search.

*Commonwealth v. Kemp*, 961 A.2d 1247, 1261 (Pa. Super. Ct. 2008) (citing *Commonwealth v. Strickler*, 757 A.2d 884, 898-99 (Pa. 2000)).  In Mr. Lopez-Torralba's case, the Superior Court found on direct appeal that only the third and eighth factors weighed against finding voluntariness.  DI 13 at 33-34, 36-37.  The third factor — whether police directed Mr. Lopez-Torralba's movements — weighed against voluntariness because officers ordered Mr. Lopez-Torralba out of the car, patted him down, placed him in a police vehicle, and directed him to sit in the passenger seat of his vehicle at the station.  *Id.* at 33-34.  The eighth factor — whether Mr. Lopez-Torralba was told he was free to leave — weighed against voluntariness because there was no evidence officers ever told Mr. Lopez-Torralba he was free to leave, and he was not, in fact, free to leave.  *Id.* at 36-37.

Lopez-Torralba's home would have greatly diminished the evidence against Mr. Lopez-Torralba at trial, but it would not necessarily eviscerate it.[35]  Mr. Lopez-Torralba argues that he was prejudiced because Ms. Basurto-Leal's testimony relied heavily upon the corroboration supplied by the evidence found at his apartment.  DI 1-1 at 34-35.  But given the lack of clarity surrounding the probable cause issue here, it is difficult to discern exactly what would have been suppressed and how it would have impacted the trial.  If he chooses to develop the issue further on appeal, it is still Mr. Lopez-Torralba's burden to demonstrate a "substantial" likelihood that suppression would have led to a different result at trial.

## IV.    Conclusion

Mr. Lopez-Torralba's petition for a writ of habeas corpus is denied.  A certificate of appealability is granted with respect to Mr. Lopez-Torralba's sole claim for habeas relief.  An appropriate order follows.

---

[35] For example, heroin was found in a car battery in Ms. Basurto-Leal's basement.  DI 20-29 at 172.